UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
SERGHEI TALMACI,                                          :
                                                          :
                                    Plaintiff,            :
                                                          :        REPORT AND
                -against-                                 :        RECOMMENDATION
                                                          :
VEP ASSOCIATES LLC, AMERICAN FIRE &                       :        22-CV-5309 (CBA)(MMH)
SECURITY, INC., and ROMAN PYATETSKY,                      :
                                                          :
                                    Defendants.           :
-------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Serghei Talmaci sued Defendants VEP Associates LLC ("VEP"), American Fire & Security, Inc. ("AFS"), and Roman Pyatetsky, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA") and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.* (*See generally* Am. Compl., ECF No. 26.)[1] The Court previously denied Plaintiff's request for default judgment. Before the Court is Plaintiff's third motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2. (*See generally* Mot., ECF No. 37.) The Honorable Carol Bagley Amon referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **granted in part** as follows: (1) default judgment should be entered against Defendants, and (2) Plaintiff should be awarded damages as set forth herein.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

I.     **BACKGROUND**

A.     **Factual Allegations**

The following facts are taken from the Amended Complaint and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

At all relevant times, VEP and AFS were for-profit corporations, each with executive offices and/or a principal place of business in Brooklyn, New York. (Am. Compl., ECF No. 26 ¶¶ 5–6, 12–13.) Pyatetsky was an "officer and/or owner" of both VEP and AFS. (*Id.* ¶¶ 19–20.) From approximately October 2016 to June 16, 2020, Defendants employed Plaintiff as a security guard responsible for guarding NetCost Market grocery stores throughout Brooklyn. (*Id.* ¶¶ 29–32.)

Plaintiff alleges he worked approximately 12 to 14 hours per day, four days per week, for a total of 48 to 56 hours per week. (*Id.* ¶¶ 43, 51–52.) The stores Plaintiff guarded were typically open from 9 a.m. until 10 p.m., but sometimes were open as late as 11 p.m. or 12 a.m. (*See id.* ¶¶ 48–49.) In addition to working during the stores' operating hours (including through his lunch break), Plaintiff was required to begin work 15 minutes before his assigned store opened and to continue working for 30 to 60 minutes following its close. (*See id.* ¶¶ 44–49.) Plaintiff was never paid for the 15-minute periods he worked before store openings. (*Id.* ¶ 56.)

Plaintiff alleges that Defendants failed to pay overtime wages, in violation of the FLSA and NYLL; failed to pay spread of hours wages, in violation of the NYLL; and failed to provide wage statements and notices, in violation of the NYLL. (*See* Am. Compl., ECF No. 26 ¶¶ 64–88.) Plaintiff also alleges that the ten largest shareholders of VEP and AFS are liable for his

unpaid wages pursuant to Section 630 of the New York Business Corporation Law.  (*Id.* ¶¶ 89–97.)

**B.    Procedural History**

Plaintiff initiated this action on September 7, 2022.  (*See generally* Compl., ECF No. 1.) Plaintiff served the summons and Complaint on VEP and AFS on September 14, 2022 (*see* ECF Nos. 7–8) and on Pyatetsky on October 21, 2022 (*see* ECF No. 9).  After Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against them on December 6, 2022.  (ECF No. 12.)

Plaintiff initially moved for default judgment on February 6, 2023, seeking damages including unpaid wages, liquidated damages, prejudgment interest, attorneys' fees, and costs. (*See generally* ECF Nos. 13–14.)   Judge Amon referred that motion for report and recommendation.  (Feb. 7, 2023 Order Referring Mot.)  On June 7, 2023, the Court ordered Plaintiff to show cause for why the first motion for default judgment should not be denied for failure to comply with the requirements for default judgment motions prescribed by this Court's Local Civil Rules.  (*See* June 7, 2023 Order to Show Cause.)  Plaintiff then withdrew the first motion for default judgment.  (*See* ECF No. 16.)

Plaintiff filed a second motion for default judgment on June 21, 2023, seeking the same relief as the first motion.  (*See generally* ECF No. 18.)  Judge Amon referred the second motion for report and recommendation.   (June 21, 2023 Order Ref. Mot.)   The undersigned recommended denial of default judgment.  *See Talmaci v. VEP Assocs. LLC*, No. 22-CV-5309 (CBA)(MMH), 2024 WL 1124834, at *5 (E.D.N.Y. Mar. 14, 2024) ("*Talmaci I*"), *adopted by* 2024 WL 1348650 (E.D.N.Y. Mar. 29, 2024) ("*Talmaci II*").  The Court found that "the Complaint fail[ed] to state an FLSA cause of action because it fail[ed] to plead that Plaintiff

[was] an individual engaged in commerce or that VEP and AFS [were] enterprises engaged in commerce," and, as a result, "the Court's discretionary exercise of supplemental jurisdiction over Plaintiff's NYLL claims [was] not warranted." *Talmaci I*, 2024 WL 1124834, at *2. On March 29, 2024, Judge Amon denied Plaintiff's second motion for default judgment without prejudice and granted Plaintiff 30 days to amend the complaint to correct the deficiencies identified in the undersigned's Report and Recommendation. *See Talmaci II*, 2024 WL 1348650 at *2.

On April 16, 2024, Plaintiff filed the Amended Complaint. (*See generally* Am. Compl., ECF No. 26.) Plaintiff served the summons and Amended Complaint on VEP and AFS on April 17, 2024, and on Pyatetsky on June 13, 2024. (*See* VEP Aff., ECF No. 29; AFS Aff., ECF No. 30; Pyatetsky Aff., ECF No. 34.) On Pyatetsky's *pro se* motion, the Court extended his deadline to answer the Amended Complaint to August 30, 2024. (*See generally* ECF No. 33; July 9, 2024 Order.) However, Pyatetsky never answered or otherwise responded to the Amended Complaint. After all Defendants failed to appear or otherwise respond to the Amended Complaint, the Clerk of Court entered a second default against them on September 25, 2024. (Entry of Default, ECF No. 36.) Plaintiff filed the instant motion for default judgment on January 8, 2025. (*See generally* Mot., ECF No. 37.) Since Pyatetsky's *pro se* motion, Defendants have not appeared in this case or responded to the instant motion.

## II.   <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has

"failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default judgment motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.  JURISDICTION & VENUE

### A.    Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action."  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).  *See* 28

U.S.C. § 1331.  The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims.  28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (cleaned up).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]."  *Sinoying Logistics Pte Ltd. V. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has jurisdiction over Defendants.  *First*, Plaintiff properly served VEP and AFS by delivering copies of the summons and Amended Complaint to the New York Secretary of State.  (VEP Aff., ECF No. 29; AFS Aff., ECF No. 30.)  This method of service complies with federal and state procedural rules for service on a limited liability company and a corporation, respectively.  Fed. Rs. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311-a(a); N.Y. Ltd. Liab. Co. Law § 301(a); N.Y. Bus. Corp. Law § 306(b)(1).  Further, Plaintiff properly served Pyatetsky by delivering a copy of the summons and Amended Complaint to "Alex 'Doe,'" a person of suitable age and discretion, at Pyatetsky's "actual place of business, dwelling place, or usual place of abode" and mailing a copy of the summons and Amended

Complaint to the same address. (Pyatetsky Aff., ECF No. 34.) This service method follows federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

*Second*, the Court has general jurisdiction over VEP and AFS because they are New York companies "'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301)), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018); *see also Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 237 (S.D.N.Y. 2023) (citing N.Y. C.P.L.R. § 301 and finding that the Court had personal jurisdiction over a New York limited liability company with a principal place of business in New York). Although Plaintiff does not allege Pyatetsky's domicile, the Court would have general jurisdiction over him if he was domiciled in New York. *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *4 (E.D.N.Y. Sept. 19, 2024) (citing *Francis*, 2018 WL 4292171 at *3), *adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (Dec. 5, 2024). If he was not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y.] C.P.L.R. § 301, or specific jurisdiction, under [N.Y.] C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). As alleged, VEP and AFS conducted business within the State of New York and Pyatetsky was an officer or owner of those firms and was actively involved in their day-to-day management. (*See* Am. Compl., ECF No. 26 ¶¶ 11, 18, 20, 26.)

*Finally*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each Defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

Accordingly, the Court has personal jurisdiction over VEP, AFS, and Pyatetsky.

### C.    Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Amended Complaint occurred during Plaintiff's employment in Brooklyn, New York. (*See* Am. Compl., ECF No. 26 ¶¶ 29–30, 35, 55.)

### IV.    PROCEDURAL COMPLIANCE

Plaintiff has demonstrated compliance with the Local Civil Rules' requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules."). Generally, Plaintiff includes a notice of the motion, a memorandum of law in support of the motion, a copy of the Amended Complaint, and a proposed judgment. Local Civ. Rs. 7.1(a)(1)-(2), 55.2(a)(1)–(2). Plaintiff also submits a copy of the Clerk's certificate of default, proof of service of the Amended Complaint, and proof of mailing the motion. Local Civ. R. 55.2(a)(3). Accordingly, the Court finds that Plaintiff has complied with this district's Local Civil Rules to provide adequate notice to Defendants. *See*

*Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as a complaint with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Plaintiff has also complied with the Servicemembers Civil Relief Act ("SCRA"), which requires, "[i]n a default judgment action, a plaintiff . . . to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also* Loc. Civ. R. 55.2(a)(1)(B). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of N.J. v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023) ("*Morales I*"), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023). Plaintiff submitted a status report from the U.S. Department of Defense Manpower Data Center confirming that Pyatetsky is not in the military. (*See* Krakower Decl. Ex. I, ECF No. 40-9 (SCRA Search).) Accordingly, the Court finds that Plaintiff has complied with the SCRA.

## V.   **DEFAULT JUDGMENT FACTORS**

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502

(PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025).   Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor.  *First*, Defendants' "non-appearance and failure to respond to the [Amended] Complaint or otherwise appear indicate willful conduct."  *See Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). While Pyatetsky appeared briefly to seek relief from the answer filing deadline, he still failed to respond to any of Plaintiff's allegations, which the Court deems willful conduct.  *Second*, without an answer to the Amended Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances."  *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021).  *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court."  *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible against Defendants.

## VI.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (emphasis omitted) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working for Defendants in October 2016 and commenced this action on September 7, 2022. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 26 ¶ 29.) In light of Defendants' default, Plaintiff may recover under the FLSA for any claims starting on September 7, 2019, and under the NYLL for all claims that accrued since the beginning of his employment.

### B.    FLSA Coverage

To establish an overtime claim under the FLSA, the "Plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Solis*, 2024 WL 4271234, at *7 (E.D.N.Y. Sept. 19, 2024) (cleaned up); 29 U.S.C. §§ 206(a), 207(a).

### 1.    Employer Subject to the FLSA

The Amended Complaint alleges that Defendants were Plaintiff's employers within the meaning of the FLSA.  (Am. Compl., ECF No. 26 ¶¶ 9, 16, 28.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sept. 23, 2022); *see* 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively.  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

### a.    VEP & AFS

Here, Plaintiff properly pleads enterprise coverage as to VEP and AFS.  An employer is an "enterprise engaged in commerce or in the production of goods for commerce" subject to the FLSA when the employer: (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done . . . not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR)(VMS), 2020 WL 6370148, at *10 (E.D.N.Y. Aug. 11, 2020), *adopted by* 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).  The Amended Complaint alleges, in conclusory fashion, that "at all times

relevant to this [Amended] Complaint, the annual gross receipts of [VEP and AFS] were not less than $500,000," and that VEP and AFS were "engaged in an industry having an effect on commerce" within the meaning of the FLSA.  (Am. Compl., ECF No. 26 ¶¶ 7–8, 14–15.)  As the Court previously warned Plaintiff in denying his second motion for default judgment, "[t]hese conclusory allegations are no more than a rote recitation of the statutory language." *Talmaci I*, 2024 WL 1124834, at *4.

However, "[o]n default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'"  *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023). Here, Plaintiff asserts that he "regularly used goods and materials that have been moved in, or produced for, interstate commerce," that VEP and AFS "provided [him] with uniforms consisting of pants, shirts, a jacket, and a hat during the performance of his duties," and that "[t]hese goods and materials have been moved in interstate commerce."  (Am. Compl., ECF No. 26 ¶ 37–39.)  These facts are sufficient to infer that VEP and AFS qualify as an enterprise engaged in interstate commerce within the meaning of the FLSA.  *See* 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Gaitian v. D'Amico Industries LLC*, No. 22-CV-6466 (PKC)(SJB), 2024 WL 4265839 at *7 (E.D.N.Y. Sept. 23, 2024) ("[T]he clear language of [the] FLSA indicates that even a business engaged in purely intrastate activities [cannot] claim an exception from FLSA coverage if the goods its employees handle have moved in interstate commerce."); *cf. Oyenuga v. Presidential Sec. Servs. LLC.*, No. 22-CV-4972 (DG)(RER),

2023 WL 7687237, at *3 n.2 (E.D.N.Y. Sept. 25, 2023) (finding no enterprise coverage where security guard plaintiff failed to allege that defendant employers purchased or handled out of state supplies). Because Plaintiff alleges that Defendants purchased or handled out-of-state supplies, which he in turn used, enterprise coverage is fulfilled. *See Kennedy v. Imperial Sec. & Consultants LLC*, No. 23-CV-2790 (DLI)(LB), 2024 WL 3387261, at *4 (E.D.N.Y. May 1, 2024) ("A plaintiff can demonstrate such ties [to interstate commerce] by alleging that defendant's [employees] wear uniforms or handle goods that originated out-of-state."); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 190 (E.D.N.Y. 2015) (finding that interstate commerce nexus existed where security guards "handle[d] goods and materials (*e.g.* log books, uniforms, and walkie-talkies) that have been produced for and moved in commerce").

Accordingly, Plaintiff's allegations and the uncontested evidence in this case are sufficient to establish that VEP and AFS are employers within the meaning of the FLSA.[2]

### b.    Pyatetsky

Additionally, Plaintiff has successfully established that Pyatetsky was his employer. With respect to an individual defendant, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or

---

[2] Notwithstanding this conclusion, "[t]he preferred practice would be to provide specific facts as to each element of [Plaintiff's] claim[s]." *Luna v. Gon Way Constr., Inc.*, No. 16-CV1411 (ARR)(VMS), 2017 WL 835321, at *5 n.2 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *6 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

The Amended Complaint alleges that Pyatetsky "had the power to determine employee policies," "was actively involved in managing the day-to-day operations," and "had power over personnel decisions . . . including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment" at VEP and AFS. (*See* Am. Compl., ECF No. 26 ¶¶ 21–26.) These allegations are sufficient to establish that Pyatetsky, like VEP and AFS, was Plaintiff's employer within the meaning of the FLSA, and was therefore required to comply with the FLSA's overtime provisions. *See Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 410 (E.D.N.Y. 2017) (holding that the individual owner and operator of a corporation who set wages and the employer's operational schedule, and hired and fired employees, was an "employer" under the FLSA); *Sanchez*, 643 F. Supp. 3d at 368 (same).

## 2.    Employee Subject to the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"  *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021) (quoting 29 U.S.C. § 207(a)(1)), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021).  The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements.  *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions).  Whether a plaintiff-employee's activities fall under such exemptions is a question of law.  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Plaintiff has alleged facts that establish he is engaged in non-exempt employment under the FLSA.[3]  Specifically, the Amended Complaint alleges that Plaintiff was employed by Defendants, who are engaged in commerce, as a security guard for NetCost Market stores "during the store's operating hours and then set[ting] [the] security alarm at the end of each shift."  (Am. Compl., ECF No. 26 ¶ 36; *see id.* ¶¶ 8, 15, 29.)  The Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions.  Accordingly, Plaintiff qualifies for the protections of the FLSA.

---

[3] Defendants have not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee.  *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

### 3. NYLL Coverage

In order to plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190).  "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through [] 'the degree of control exercised by the purported employer over the employee.'"  *Brito*, 2022 WL 875099 at *8 (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  The Court has already determined that Defendants are Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B.1., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition, Defendants are Plaintiff's employers within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7 (cleaned up).  Therefore, Plaintiff qualifies for the protections of the NYLL.

### C. Joint & Several Liability

"As the Court has found that [Defendants] were jointly [Plaintiff's] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [Plaintiff's] favor."  *Fermin*, 93 F. Supp. 3d at 37 (collecting cases); *see also Brito*, 2022 WL 875099, at *8.

#### D.    Statutory Violations

In the Amended Complaint, Plaintiff alleges that Defendants violated the FLSA and NYLL overtime wages provisions and the NYLL provisions related to spread of hours pay and wage notices and statements. (*See* Am. Compl., ECF No. 24 ¶¶ 64–88.) Plaintiff also alleges that the ten largest shareholders of VEP and AFS are liable for his unpaid wages pursuant to New York Business Corporation Law § 630 (*id.* ¶¶ 89–97), but does not pursue this claim in the default judgment motion papers. Accordingly, this latter claim is waived. *Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962 (EK)(MMH), 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *adopted by* 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022).

#### 1.    FLSA & NYLL Overtime Wages (Claims I & II)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Dejesus*, 726 F.3d at 88 (cleaned up) (quoting 29 U.S.C. § 207(a)(1)). The NYLL includes the same requirement, providing that 8 hours constitutes a "legal day's work." N.Y. Lab. Law § 160. For non-hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. § 142-2.2. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they

worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently established that Defendants failed to pay him the requisite overtime pay. Plaintiff alleges that between October 2016 and June 16, 2020, he typically worked between 48 and 56 hours per week but Defendants did not pay him an overtime premium of one-and-one half his regular pay rate for each hour worked over 40 per week. (Am. Compl., ECF No. 26 ¶¶ 52–56.) The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime under the FLSA and NYLL.

### 2. NYLL Violations

#### a. Wage Notice & Wage Statement Violations (Claims III & IV)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195(1)(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*").  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).  In other words, the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *11 (E.D.N.Y. Sept. 26, 2024) (quoting *Guthrie III*, 113 F.4th at 309), *adopted by* Order Adopting R. & R. *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025).

Here, "[t]hough the deficiencies in Defendants' provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrate[] how those technical violations led to either a tangible injury or something akin to a traditional cause of

action, as required by the Supreme Court" or the Second Circuit. *Guthrie II*, 2023 WL 2206568, at *6. Plaintiff alleges that Defendants failed to provide notices and statements containing certain information required by New York Labor Law § 195. (*See* Am. Compl., ECF No. 26 ¶¶ 77, 80). However, "[w]ithout plausible allegations that [Plaintiff] suffered a concrete injury because of [Defendants'] failure to provide the required notices and statements, [Plaintiff] lacks standing to sue for that statutory violation." *Guthrie III*, 113 F.4th at 311.

The Court thus respectfully recommends that Plaintiff's claims for Defendants' alleged violations of the NYLL's wage notice and wage statement provisions should be dismissed without prejudice for lack of standing.

### b.    Spread of Hours Pay (Claim V)

NYLL regulations provide that, for non-hospitality workers, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours[.]" 12 N.Y.C.R.R. § 142-2.4. The "spread of hours" is the length of time "between the beginning and end of an employee's workday" and includes "working time plus time off for meals plus intervals off duty." *Id.* § 142-2.18. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked more than ten hours on a given day but did not receive spread of hours pay. *Sanchez*, 643 F. Supp. 3d at 378. For non-hospitality workers, "[a] limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin*, 93 F. Supp. 3d at 45 (citing *Guadalupe v. Tri–State Emp't, Mgmt. & Consulting, Inc.*, No. 10-CV-3840(NG)(CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (citing in turn N.Y. State Dep't Lab. opinion letters stating this prerequisite)).

21

The Amended Complaint states, again in conclusory fashion, that "Defendants did not pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours."  (Am. Compl., ECF No. 26 ¶ 63.) That said, Plaintiff does not include any factual allegations about his pay rate sufficient to establish whether he was paid more than the applicable minimum wage and therefore whether he was entitled to spread of hours pay during his employment.  *See Fermin*, 93 F. Supp. 3d at 45.  For this reason, Plaintiff's request for default judgment on his spread of hours claim should be denied.

Even if the Court considers the pay rates in Plaintiff's default judgment motion papers, the record establishes that he was paid more than the applicable minimum wage throughout his employment and therefore may not recover spread of hours pay.  Plaintiff avers that he was paid the following regular pay rates: (1) $10.00 per hour from October 2016 until December 30, 2016; (2) $11.00 per hour from December 31, 2016 until December 30, 2017; (3) $13.00 per hour from December 31, 2017 until February 13, 2018; (4) $14.00 per hour from February 14, 2018 to February 28, 2019; and (5) $16.00 per hour from March 1, 2019 until the conclusion of his employment.[4]  (*See* Pl.'s Decl., ECF No. 39 ¶¶ 3(a)–(c), 16–18, 25–26.) Plaintiff's hourly wages before December 31, 2016, between February 13, 2018 and December

---

[4] Plaintiff's declaration appears to contain a material error regarding when his regular pay rate increased from $14.00 per hour to $16.00 per hour.  Plaintiff states that, "[o]n or about February 14, 2018, my regular hourly wage became $14/hour.  On or about March 1, 2018, my regular hourly wage became $16/hour."  (Pl.'s Decl., ECF No. 39 ¶¶ 3(c)–(d).)  Later in the declaration, however, Plaintiff claims that "during the remainder of 2018" or "during the rest of 2018," his regular hourly wage was $14.00 (*id.* ¶¶ 17, 25, 33), and "[i]n 2019," $16.00 per hour.  (*Id.* ¶¶ 18, 26.)  Based on the overtime calculations in the later paragraphs, the Court infers that Plaintiff's regular hourly rate increased to $16.00 on March 1, <u>2019</u>, not March 1, <u>2018</u> as stated in paragraph 3(d).

31, 2018 (exclusive), and after February 28, 2019 exceeded the minimum wage rates for all employers in New York City. *See* N.Y. Lab. Law § 652(1); *see also* 12 N.Y.C.R.R. § 142-2.1(a). For the remaining periods from December 31, 2016 to February 28, 2019, minimum wages in New York City differed based on the size of the employer. "Large" employers, with eleven or more employees, were required to pay a minimum wage between $11.00 and $15.00 per hour, while "small" employers, with ten or fewer employees, paid a minimum wage of between $10.50 and $15.00 per hour. N.Y. Lab. Law § 652(1)(a)(i)–(ii); *see also* 12 N.Y.C.R.R. § 142-2.1(a). Therefore, if Defendants were "large employers," Plaintiff was paid the minimum wage or less from December 31, 2016 to February 28, 2019; but if Defendants were "small employers," Plaintiff was paid more than the minimum wage during that time. "Because Plaintiff does not allege any facts showing that Defendants employed more than ten employees, the Court assumes for purposes of its analysis that Defendants constitute a small employer for purposes of the New York Labor Law." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675 (KAM)(TAM), 2024 WL 3344001, at *8 n.5 (E.D.N.Y. July 9, 2024). Accordingly, Plaintiff's pay exceeded the minimum wage throughout his employment and he is therefore not entitled to spread of hours pay. *See Fermin*, 93 F. Supp. 3d at 45. The Court thus respectfully recommends that default judgment against Defendants as to Plaintiff's spread of hours claim should be denied.

## VII.   **DAMAGES**

As Defendants' liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "On a motion for a default judgment, a plaintiff has the burden to prove damages to the

Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus*, *LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned during the same period." *Royal Thai Plus*, 2018 WL 1770660, at *10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9. Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

Plaintiff seeks damages for unpaid overtime, liquidated damages, prejudgment interest, and attorneys' fees and costs. (Mem., ECF No. 38 at 8–11.)[5] Plaintiff submits his declaration detailing his hourly rates of pay throughout his employment and his proposed damages calculations. (Pl.'s Decl., ECF No. 39.) The declaration attaches a damages chart purportedly based on Plaintiff's paystubs, but the damages chart is inconsistent with Plaintiff's sworn declaration. (*Compare* Damages Chart, ECF No. 39-1 at 1–2 *with id.* ¶¶ 3(a)–(c), 16–18, 25–26.) Because the damages chart is "rife with inconsistencies and errors, which make it impossible for the Court to rely on plaintiff's calculations . . . the Court independently calculate[s] plaintiff's damages based on the reasonably certain damages pleaded in plaintiff's [Amended] Complaint and supported by his Affidavit" and disregards the damages chart entirely. *Davis v. Navada's Bar & Lounge, LLC*, No. 22-CV-4176 (LDH) (CLP), 2025 WL 1640499, at *5 (E.D.N.Y. Feb. 16, 2025), *adopted by* Order Adopting R. & R., *Davis v. Navada's Bar & Lounge, LLC*, No. 22-CV-4176 (LDH)(CLP) (E.D.N.Y. Mar. 31, 2025); *see also Brummell v. K1 HVAC Inc.*, No. 19-CV-5488 (FB)(RML), 2021 WL 3888138, at *4 n.4 (E.D.N.Y. Aug. 13, 2021) (noting that plaintiff's declaration concerning the number of hours worked was inconsistent with allegations in the complaint and electing to use the information contained in the declaration to calculate damages "[b]ecause the declaration is offered in place of live testimony"), *adopted by* 2021 WL 3884194 (E.D.N.Y. Aug. 31, 2021); *accord Morales I*, 2023 WL 375647, at *5 (noting that inconsistencies and errors in pleadings and damages submissions "constrain the Court's ability to calculate damages").

---

[5] The Court does not address Plaintiff's request for spread of hours pay.

## A. Overtime Wages

As noted, "[u]nder both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per week. *Brito*, 2022 WL 875099, at *16; *see Dejesus,* 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)). When a plaintiff is paid above the minimum wage, however, the "overtime compensation should be determined by multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at *7 (S.D.N.Y. Sept. 8, 2023), *adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

During Plaintiff's employment, the prevailing minimum wage under New York law ranged from $9.00 per hour to $15.00 per hour. *See* N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a)(1)(i)–(ii). At all relevant times, Plaintiff's regular pay rate exceeded the applicable minimum wage rate. (*See* § VI.D.2.b, *supra*.) Accordingly, the Court will multiply Plaintiff's regular pay rate by 1.5 to calculate his overtime pay rate. *See Brito*, 2022 WL 875099, at *16.

For overtime hours for which Plaintiff was not paid at all, the Court multiplies the overtime rate by the number of unpaid overtime hours. *Marin v. J&B 693 Corp.*, No. 19-CV-569 (JGK)(KHP), 2022 WL 377974, at *8 n.7 (S.D.N.Y. Jan. 21, 2022), *adopted by* 2022 WL

374522 (S.D.N.Y. Feb. 7, 2022). Plaintiff alleges that he was required to begin work at 8:45 a.m. and was never paid for the first 15 minutes of working before NetCost Market stores opened at 9:00 a.m. (*See* Am. Compl., ECF No. 26 ¶¶ 44, 48–49, 56.) Because Plaintiff alleges that he worked more than 40 hours per week (*see id.* ¶ 52), Plaintiff is entitled to overtime pay for each unpaid 15-minute period. Plaintiff claims he worked approximately 9 hours of such unpaid 15-minute periods in 2016; 41 hours in 2017; 6 hours in the first six weeks of 2018; 36 hours in the remainder of 2018; 42 hours in 2019; and 21 hours in 2020. (*See* Pl.'s Decl., ECF No. 39 ¶¶ 13–18, 20.) Using this information, the Court determines the unpaid overtime as set forth in Table 1:

*Table 1: Unpaid Overtime Wages*

| Time Period | Regular Pay Rate | OT Pay Rate | Unpaid OT Rate Hours | Total Unpaid OT Wage |
|---|---|---|---|---|
| 2016 | $10.00 | $15.00 | 9 | $135.00 |
| 2017 | $11.00 | $16.50 | 41 | $676.50 |
| First six weeks of 2018 | $13.00 | $19.50 | 6 | $117.00 |
| Remainder of 2018 | $14.00 | $21.00 | 36 | $756.00 |
| 2019 | $16.00 | $24.00 | 42 | $1,008.00 |
| 2020 | $16.00 | $24.00 | 21 | $504.00 |
| | | | **Total** | **$3,196.50** |

Plaintiff also alleges that, in addition to the unpaid 15-minute periods discussed above, he regularly worked more than 40 hours per week during store hours and was paid his regular rate of pay, not the overtime rate. Plaintiff alleges he worked 77.25 such hours in 2016; 361 hours in 2017; 140.25 hours during the first six weeks of 2018; 819 hours during the remainder

of 2018; 918 hours in 2019; and 287.5 hours in 2020. (*See* Pl.'s Decl., ECF No. 39 ¶¶ 22–26, 28.) For those hours where "Plaintiff has already been paid a weekly amount for these [overtime] hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked." *Sanchez*, 364 F. Supp. 3d at 377. Plaintiff is entitled to the total underpaid overtime wages set forth in Table 2:

*Table 2: Underpaid Overtime Wages*

| Time Period | Regular Pay Rate | OT Pay Rate | Difference between Regular Pay Rate & OT Pay Rate | Overtime Hours Worked | Total Underpaid OT Wage |
|---|---|---|---|---|---|
| 2016 | $10.00 | $15.00 | $5.00 | 77.25 | $386.25 |
| 2017 | $11.00 | $16.50 | $5.50 | 361 | $1,985.50 |
| First six weeks of 2018 | $13.00 | $19.50 | $6.50 | 140.25 | $911.63 |
| Remainder of 2018 | $14.00 | $21.00 | $7.00 | 819 | $5,733.00 |
| 2019 | $16.00 | $24.00 | $8.00 | 918 | $7,344.00 |
| 2020 | $16.00 | $24.00 | $8.00 | 287.5 | $2,300.00 |
| | | | | **Total** | **$18,660.38** |

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$21,856.88** in overtime pay damages.[6]

---

[6] $21,856.88 is the sum of Plaintiff's unpaid overtime wages ($3,196.50) and Plaintiff's underpaid overtime wages ($18,660.38).

## B. Liquidated Damages

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)); *see Royal Thai Plus*, 2018 WL 1770660 at *11. However, the FLSA and the NYLL prohibit "duplicative liquidated damages for the same course of conduct. Double recovery is generally disfavored." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *13 (E.D.N.Y. Dec. 9, 2019). Here, where Defendants defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. Accordingly, the Court respectfully recommends that Plaintiff should be awarded an additional **$21,856.88** in liquidated damages under the NYLL only.

## C. Prejudgment Interest

Plaintiff requests an unspecified amount of prejudgment interest. (Mem, ECF No. 38 at 10.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See*

*Fermin*, 93 F. Supp. 3d at 48.  Accordingly, Plaintiff is eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *Ramah*, 2021 WL 7906551, at *10; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), *reconsid. denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (cleaned up); *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).  Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49.  Courts generally calculate prejudgment interest under the NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Sanchez*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded.  (*See* § VII.B., *supra*.)  The Court calculates prejudgment interest by selecting August 16, 2018 as the midpoint between the date Plaintiff's damages claims accrued (approximately October 16, 2016) and Plaintiff's end date of employment (approximately June 15, 2020) as a reasonable intermediate date.  (*See* Pl.'s Decl., ECF No. 39 ¶ 1.)  Applying a nine percent per annum rate, the Court respectfully

recommends that Plaintiff should be awarded **$13,922.37**[7] in prejudgment interest to increase at a rate of $5.39 per day until entry of judgment.

### D.    Attorneys' Fees

Plaintiff seeks $17,635.00 in attorneys' fees for work performed by the law firms Krakower DiChiara LLC and Ghaly Law LLC.  (Mem., ECF No. 38 at 11; Krakower Decl., ECF No. 40 ¶¶ 23–24; Ghaly Decl., ECF No. 41 ¶¶ 2, 4.)

"'Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions.'"  *Solis*, 2024 WL 4271234, at *17 (quoting *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020)).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Esquivel*, 2023 WL 6338666, at *16 (cleaned up).  "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id. (citation omitted).  "In FLSA cases in the Eastern District of New York, reasonable hourly

---

[7] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($21,856.88) by 9%, then dividing by 365, for a daily rate of $5.39.  The daily rate is then multiplied by the number of days between August 16, 2018 and September 11, 2025, the date of this Report and Recommendation (2,583 days).

rates range from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023) ("*Morales II*"), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241–43 (E.D.N.Y. 2025) (noting the considerable inflation that has occurred in recent years and the Court's obligation to award attorneys' fees commensurate with current market conditions). In reviewing reasonableness of hours billed, "a district court should examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case, and if it concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation." *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

The Court finds that the requested hourly rates for attorneys Todd Krakower ($450.00) and Erika Ghaly ($400.00) are reasonable and substantiated. Attorney Krakower has 30 years of experience litigating wage and hour and employment discrimination claims. (Krakower Decl., ECF No. 40 ¶ 25.) Courts have found that the rate of $450.00 per hour for an attorney of Attorney Krakower's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. *See Marquez v. Indian Taj, Inc.*, No. 20-CV-5855 (DG)(RML), 2022 WL 4485948, at *8 (E.D.N.Y. Aug. 5, 2022) (awarding $450 hourly rate for partner with 23 years' wage and hour litigation experience); *Nam*, 2021 WL 878743, at *10 ("An hourly rate of $450 remains within the range of rates

found reasonable for partners with twenty or more years of experience in this District"); *Chen v. Asian Terrace Rest,, Inc.*, 507 F. Supp. 3d 430, 434–35 (E.D.N.Y. 2020) (awarding $450.00 hourly in a FLSA default to experienced lead counsel).  Similarly, Attorney Ghaly has "extensive experience litigating wage and hour and employment discrimination claims, with 10 years of practice in employment law," and started her own firm in 2021.  (Ghaly Decl., ECF No. 41 ¶¶ 5–6.)  Although $400.00 is on the higher end for attorneys with 10 years of experience, Ghaly's specialization in employment law and status as a firm owner support the rate.  The requested hourly rates are thus commensurate with both attorneys' training and experience and consistent with what a reasonable client would pay for comparable legal services.  *Morales II*, 2023 WL 7684775, at *7.

However, the Court finds that the number of hours expended in this case is unreasonable.  According to the billing records, Krakower has spent a total of 20.7 hours on this case, and Ghaly has spent 20.8 hours, for a total of 41.5 hours.  (*See* Krakower Decl. Ex. J, ECF No. 40-10; Ghaly Decl. Ex. A, ECF No. 41-1.)  The total amount of hours is on the higher end of hours deemed reasonable for a straightforward wage-and-hour case in which Defendants declined to meaningfully defend against Plaintiff's claims.  *See, e.g., Perez v. E.P.E. Enterprise Corp.*, No. 22-CV-6353 (DG)(RER), 2023 WL 7000934, at *10 (E.D.N.Y. Aug. 29, 2023) (finding that 23.5 hours is within the range of time spent on FLSA and NYLL default judgment cases in this district); *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *8 (E.D.N.Y. July 18, 2023) (collecting cases and finding 22 hours spent on an FLSA default judgment case reasonable); *Lazaro v. Best Fish Mkt. Corp.*, No. 21-CV-5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 31, 2022) ("19.50 hours is a reasonable amount of time to obtain a default judgment" in an FLSA case.).

Moreover, some of the time records reflect needless duplication and inefficiency. *See Brummell*, 2021 WL 3888138, at *9 n.8 (finding number of attorney hours unreasonable when two lawyers including duplicative time entries). For example, at least eight entries among the two attorneys refer to drafting, revising, or reviewing a motion for default judgment. (*See* Krakower Decl. Ex. J, ECF No. 40-10 (time entries for Nov. 29, 2022, Nov. 30, 2022, Jan. 15, 2023 & Feb. 5, 2023); Ghaly Decl. Ex. A, ECF No. 41-1 (time entries for Feb. 1, 2023, Feb. 2, 2023, Feb. 5, 2023 & Feb. 6, 2023).) Furthermore, counsel's efforts to prosecute this action have not reflected their extensive experience with wage and hour litigation. The instant motion is counsel's third attempt to obtain default judgment against Defendants: the first was withdrawn after the Court pointed out deficient compliance with the district's Local Civil Rules, and the second was denied without prejudice for failure to plausibly allege the required elements of an FLSA claim. (*See* June 7, 2023 Order to Show Cause); *Talmaci II*, 2024 WL 1348650, at *2. Notably and as discussed, the supporting submissions to the instant motion also contain numerous inconsistencies, including errors in the damages chart and Plaintiff's declaration. (*See* §§ VI.D.2.b. & VII.A., *supra*.) In light of the foregoing, a 20% reduction in the requested attorneys' fees is warranted. *Perry*, 2022 WL 1018791, at *14 (cleaned up) ("Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours."); *see also, e.g.*, *Thompson v. Hyun Suk Park*, No. 18-CV-006 (AMD)(ST), 2020 WL 5822455, at *13 (E.D.N.Y. Sept. 1, 2020) (reducing fees by 20% in light of duplicative hours and unsuccessful motions); *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *13 (E.D.N.Y. Sept. 21, 2015) (applying 10% across-the-board reduction in hours to account for excessive and duplicative time).

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$14,108.00** in attorneys' fees, representing 80% of the requested $17,635.00.

## E.    Costs

Plaintiff requests $910.00 in costs, consisting of $400.00 in filing fees and $510.00 in process server fees.  (*See* Mem., ECF No. 38 at 11; Krakower Decl., ECF No. 40 ¶ 29.) Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiff must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine*, 2022 WL 17820084, at *11.

A careful review of the record supports a finding that Plaintiff is entitled to $810.00 in costs.  First, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Plaintiff is entitled to the $400 filing fee for this case, as the docket reflects that Plaintiff paid the $402 fee upon case initiation.  (ECF No. 1 Dkt. Entry.)[8]  Plaintiff also submits counsel's invoices supporting $410.00 in process server fees.  (*See* Krakower Decl. Ex. K, ECF No. 40-11.).[9]

---

[8] Although the docket reflects that Plaintiff paid a $402.00 filing fee, Plaintiff's counsel stated that only $400.00 in filing fees were incurred.  (*See* Krakower Decl., ECF No. 40 ¶ 29.)  Accordingly, the Court only awards $400.00 for filing fees.  *See Cisneros v. Zoe Constr. Corp.*, No. 21-CV-6579 (DG)(CLP), 2023 WL 5978702, at *13 n.17 (E.D.N.Y. Aug. 10, 2023) ("[G]iven that [p]laintiff has requested only $280.00 in costs, the Court will not award more than what was requested."), *adopted by* Order Adopting R. & R., *Cisneros v. Zoe Constr. Corp.*, No. 21-CV-6579 (DG)(CLP) (E.D.N.Y. Aug. 31, 2023.)

[9] Specifically, counsel submits invoice number S1882287 for $77.00 from Servico (Krakower Decl. Ex. K, ECF No. 40-11 at 1); invoice number S1882288 for $77.00 from Servico (*id.* at 2); a $100.00 receipt for a transaction with Undisputed Legal Inc. (*id.* at 3); invoice number S1907678 for $78.00 from Servico (*id.* at 4); and two copies of invoice number S1907677 for $78.00 from

Because Defendants are jointly and severally liable for the damages outlined herein, the Court respectfully recommends that Plaintiff should be awarded a total of **$810.00** in costs.

### F.    Post-Judgment Interest

A plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court." *Brito*, 2022 WL 875099, at *27. "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest; to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 37 should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment as amended[10] against Defendants VEP Associates LLC, American Fire & Security, Inc., and Roman Pyatetsky; (2) Plaintiff should be awarded damages of **$72,554.13**, which includes: (a) **$21,856.88** in unpaid overtime wages; (b) **$21,856.88** in liquidated damages; (c) **$13,922.37** in prejudgment interest to increase at a rate of $5.39 per day until entry of judgment; (d) **$14,108.00** in attorneys' fees; and (e) **$810.00**

---

Servico (*id.* at 5–6.) The latter two documents appear to be duplicate, and thus the Court only includes one of them in its calculations: ($77.00 x 2) + $100.00 + ($78.00 x 2) = $410.00.

[10] The proposed judgment at ECF No. 40-12 should be amended consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

in costs; and (3) Plaintiff should be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  All other requests in Plaintiff's motion should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to VEP Associates LLC at 726 Gerald Court, Brooklyn, NY 11235; to American Fire & Security, Inc. at 1225 Franklin Ave, Suite 235, Garden City, NY 11530; and to Roman Pyatetsky at 726 Gerald Court, Brooklyn, NY 11235.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Amon.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 11, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge